AO 91 (Rev. 01/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Massachusetts

| | |
|---|---|
| United States of America <br> v. <br><br> LARRY WILKINS AND RONALD MERRITT <br> *Defendant* | ) <br> ) <br> ) Case No. 11-mj-6082-LTS <br> ) <br> ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of  4/23/2011  in the county of  Suffolk  in the _____ District of  Massachusetts , the defendant violated  21  U. S. C. §841 , an offense described as follows:

knowingly and intentionally possessing cocaine base, a/k/a "crack cocaine," a Schedule II substance, with intent to distribute and distributing cocaine base, a/k/a "crack cocaine," and aiding and abetting in violation of 18 U.S.C. 2.

This criminal complaint is based on these facts:
See attached affidavit of BPD DET GREG WALSH

Continued on the attached sheet.

_____
*Complainant's signature*

DET GREG WALSH
*Printed name and title*

Sworn to before me and signed in my presence.

Date: May 25, 2011

_____
*Judge's signature*

City and state: Boston, Massachusetts      T. SOROKIN, U.S. MAGISTRATE JUDGE
*Printed name and title*

Case 1:11-cr-10217-RGS   Document 1   Filed 05/25/11   Page 2 of 10



Case 1:11-cr-10217-RGS   Document 1   Filed 05/25/11   Page 2 of 10

## AFFIDAVIT OF DET. GREG WALSH

I, Greg Walsh, being duly sworn, depose and state as follows:

1. I am a Detective with the Boston Police Department where I have been employed for more than 10 years. I am currently assigned to the Drug Control Unit ("DCU") in District D-4, which covers neighborhoods in the Back Bay, South End, Lower Roxbury, and Fenway areas of Boston.

2. During my tenure with the Boston Police Department, I have participated in investigations relating to the distribution of controlled substances including cocaine, cocaine base (also known as "crack cocaine"), heroin, marijuana, and other illegal drugs and have received training in the area of narcotics investigations. I have been the affiant on affidavits in support of search warrants, arrest warrants, and other applications. I have also made many seizures and undercover purchases of crack cocaine and have identified it in the field on dozens of occasions.

3. This Affidavit is submitted in support of an application for a criminal complaint charging **LARRY WILKINS** and **RONALD MERRITT** with possessing cocaine base, a/k/a "crack cocaine," a Schedule II controlled substance, with intent to distribute and

-1-

distribution of cocaine base, a/k/a "crack cocaine," in violation of Title 21, United States Code, Section 841(a)(1) and aiding and abetting the distribution of cocaine base, a/k/a "crack cocaine," in violation of Title 18, United States Code, Section 2. On April 23, 2011, **WILKINS** and **MERRITT** was arrested around the intersection of Washington and E. Berkeley Streets after they sold crack cocaine to an undercover police officer ("the UC") and additional amounts of crack cocaine were recovered from them at and (with respect to **WILKINS**) after arrest as well.

4. I am familiar with and was present during the underlying investigation and arrests. I have reviewed reports and spoken with the UC as well as other officers assisting in the investigation, including the officers who arrested **MERRITT** at approximately 5:30 p.m. that afternoon.

5. This affidavit does not set forth all the facts developed during the underlying investigation. Rather, it sets forth facts I believe to be sufficient to establish probable cause to believe that **WILKINS** and **MERRITT** committed the crimes set forth in the accompanying Criminal Complaint.

6. A principal responsibility of the D-4 DCU is to investigate drug trafficking in our district. Among other places, these efforts have frequently involved operations in and around the Pine Street Inn located at 444 Harrison Avenue. This is an area frequented by many drug abusers who in turn attract

dealers seeking to take advantage of them. Based on increasing drug activity in this area and the occurrence of violence associated with it, BPD undercover officers have been used to purchase street level amounts of drugs, (usually that form of cocaine known as cocaine base or "crack cocaine"), from individuals who come into the area to sell drugs.

7. Activity took place in these operations on April 23, 2011. Shortly before 5:30 p.m., a BPD undercover officer ("the UC") was deployed in the area of the Pine Street Inn for the purpose of making undercover buys of crack cocaine. The UC is a veteran of the Boston Police Department who has been involved in many investigations involving crack cocaine and is familiar with its color, texture, and appearance and who has frequently been called upon to identify the drug in the field. Prior to going into this area, the UC had been given $80 of previously recorded buy money with which to purchase street-level amounts of crack cocaine. Myself and other officers were also deployed in this area to conduct surveillance and protect the UC (who was equipped with a non-recording transmitter that allowed officers to monitor conversations the UC had while on the street).

8. While in the area of 1124 Washington Street (immediately adjacent to the Sid's Smoke Shop) posing as a drug buyer, the UC noticed a man later identified as **MERRITT** and asked him if he

knew where the "stacks" were.[1] **MERRITT** promptly asked the UC if he "needed something" which the UC understood to be mean was he/she looking for drugs. The UC indicated that he/she had $40 and **MERRITT** told the UC to follow him.

9. **MERRITT** and the UC then walked down Washington Street towards Traveler Street. As they walked, **MERRITT** asked the UC to give him the $40, which the UC did.

10. When **MERRITT** and the UC got to the intersection of Washington and Traveler Streets, **MERRITT** began to cross the street without having delivered any drugs to the UC. The UC asked **MERRITT** where he was going and **MERRITT** replied, "I have to get the stuff from my boy, he's right here," and indicated he would be right back. The UC immediately demanded that **MERRITT** give him/her something to hold as security and **MERRITT** handed the UC his cell phone as "collateral" until the UC got the drugs.

11. **MERRITT** then went across Washington Street where the UC watched him meet with an individual the UC recognized to be **WILKINS** from a prior drug investigation and a female subsequently identified as AUDREY VELEZ. **WILKINS, MERRITT** and VELEZ then walked down Washington Street towards E. Berkeley Street while

---

[1] Based on my experience in this area of the city, I know "the stacks" to be a term used by drug users to refer to the area near the Pine Street Inn which often serves as a gathering place for drug customers and the dealers who supply them.

the UC and other members of my unit kept them under surveillance.

12. When the trio reached the auto detailing lot located at 1115 Washington Street, **WILKINS** and **MERRITT** were observed interacting with one another after it appeared that **WILKINS** had placed his hand to his mouth.[2] After this brief interaction, **WILKINS** and VELEZ continued walking down Washington to E. Berkeley Street, where they sat down at the MBTA Silver Line stop. **MERRITT** quickly turned around and walked the other way, up Washington street towards Traveler, where the UC (who had begun to move slowly down Washington Street so as to be able to keep an eye on **MERRITT** and **WILKINS**) was waiting.

13. When **MERRITT** got close to the UC, he instructed the UC to follow him up Traveler Street. As **MERRITT** and the UC were walking on Traveler Street, **MERRITT** handed the UC a plastic bag of crack cocaine and the UC gave **MERRITT** back his phone. Before the UC and **MERRITT** split up, the UC asked **MERRITT** if he/she could call **MERRITT** and **MERRITT** agreed, taking the UC's phone number and entering it into his phone. After **MERRITT** had finished, **MERRITT** called the UC's number and the UC's phone rang, displaying the number 617-866-9094. The two then separated.

---

[2] Crack dealers often carry around small amounts of crack cocaine wrapped in plastic in their mouths both to conceal the drugs from the police and to be able to swallow the drugs if approached.

14. The UC then signaled me and other members of my unit that the deal was complete. Officers approached **MERRITT** in the area of Traveler Street and Harrison Avenue and placed him under arrest, recovering one bag of crack cocaine which **MERRITT** stated that he had bought it from "the white guy I just with" (referring to the UC). Officers also seized **MERRITT**'s cell phone and determined that it had the UC's phone number in its recent call history.

15. After receiving word from the UC that the deal was complete, myself and Officer Stephen Green approached **WILKINS** and **VELEZ**, who were still at the MBTA silver line stop, and placed **WILKINS** under arrest. When I went up to **WILKINS**, he was clenching a napkin in his hand that I tried to grab. **WILKINS** initially resisted and refused to give me the napkin. When I got it away from him, I discovered it to contain 5 bags of what I identified as crack cocaine.

16. **WILKINS** was then searched and found to have the $40 in BPD buy money that had been given to the UC, a cell phone, and an additional $195 in cash. **VELEZ** was FIO'd and released.

17. A transportation wagon was then called for **WILKINS**. I personally checked the back of the wagon before putting **WILKINS** into it (after he had been handcuffed) to make sure that it was empty. However, when Officer Casallas removed **WILKINS** from the wagon at District D-4 minutes later, he found 30 packages of

crack strewn around the floor which **WILKINS** told Casallas, "I was going to give to you." During booking, I found another bag of crack cocaine on the sole of **WILKINS'** right shoe. In the booking area (after he had been <u>Mirandized</u>), **WILKINS** also said "This is all on me, leave the girl out of it."

18. All of the drugs (which were similar in size, packaging and appearance and all of which were identified by me and other officers as being crack cocaine), were provided to Sgt. Det Keenan for processing. Sgt. Det. Keenan field tested one of the packages recovered from the floor of the wagon that **WILKINS** was transported in and it was positive for cocaine base.

19. All of the drugs have been sent to the state laboratory lab for further testing. On May 24, 2011, the lab issued preliminary certifications indicating that: (I) the bag of suspected crack cocaine provided to the UC by **MERRITT**; (ii) the bag of suspected crack cocaine recovered from **MERRITT** at his arrest; (iii) the five bags of suspected crack cocaine I recovered from **WILKINS** at his arrest; (iv) the 30 bags of suspected crack cocaine recovered from the floor of the wagon used to transport **WILKINS** to District D-4; and, (v) the bag of suspected crack cocaine recovered from **WILKINS'** shoe during booking, all tested positive for cocaine base.

20. Based upon the foregoing, I submit there is probable cause to believe that, on April 23, 2011, **LARRY WILKINS** and

RONALD MERRITT possessed cocaine base, a/k/a "crack cocaine," a Schedule II controlled substance, with intent to distribute, distributed cocaine base, a/k/a "crack cocaine," and aided and abetted the distribution of cocaine base, a/k/a "crack cocaine," all in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United states Code, Section 2.

Signed under the pains and penalties of perjury this ___ day of May, 2011.

_____
DET. GREG WALSH

Sworn to and subscribed before me this 25 day of May, 2011.

_____
LEO T. SOROKIN
UNITED STATES MAGISTRATE JUDGE